**THE OTTINGER FIRM, P.C.**
Robert W. Ottinger (Bar No. 156825)
robert@ottingerlaw.com
2108 N Street, Suite N
Sacramento, CA 95816
Tel: (415) 262-0096 // Fax: (212) 571-0505

Allison Marculitis (admitted *pro hac vice*)
allison@ottingerlaw.com
195 Montague Street, 14th Floor
Brooklyn, NY 11201
Tel: (212) 931-6413

*Attorneys for Plaintiff/Counter-Defendant*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Viola Trebicka (Bar No. 269526)
violatrebicka@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel: (213) 443-3000 // Fax: (213) 443-3100

Sara Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
William Pilon (Bar No. 326487)
williampilon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000 // Fax: (650) 801-5100

Teodora Pasca (admitted *pro hac vice*)
teodorapasca@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016-7103
Tel: (212) 849-7000 // Fax: (212) 849-7100

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ROBERT GRUENDEL,<br><br>       Plaintiff,<br><br>vs.<br><br>FIGURE AI, INC.,<br><br>       Defendant.<br><br><hr><br>FIGURE AI, INC.,<br><br>       Counter-Claimant.<br><br>vs.<br><br>ROBERT GRUENDEL.<br><br>       Counter-Defendant. | Case No.: 5:25-cv-10094-EJD<br><br>**JOINT LETTER SUBMISSION**<br><br>**DISCOVERY DISPUTE OVER PLAINTIFF'S RETENTION OF FIGURE DOCUMENTS**<br><br>Referred to: Hon. Virginia K. DeMarchi<br><br><br>Fact Discovery Cut-off: November 14, 2026<br>Expert Discovery Cut-off: March 15, 2027 |

## I.    STATEMENT OF THE DISPUTE (100/100 words)

Plaintiff and Counter-Defendant Robert Gruendel ("Plaintiff") brought this case, alleging whistleblower retaliation. This dispute concerns Plaintiff's retention of thousands[1] of Defendant and Counter-Claimant Figure AI's ("Figure") documents, which Figure contends include privileged, confidential, proprietary, and trade secret information and which Plaintiff alleges collecting in anticipation of litigation. The parties dispute whether Plaintiff is entitled to these documents and how they should be treated in discovery.

## II.    PARTIES' POSITIONS ON THE DISPUTE

### A.  Figure's Position (1499/1500 words)

**Background**

Plaintiff violated his contractual and statutory obligations by copying Figure proprietary and trade secret information to his personal accounts, accessing it following his termination, and attempting to cover his tracks through deletions and system cleaners. This conduct gave rise to Figure's Counterclaims. Dkt 22. Separately, and in further violation of his obligations, Plaintiff engaged a vendor who indiscriminately "collected" a huge swath of nearly 40,000 documents from Plaintiff's Figure-issued laptop.

These improperly-retained documents contain highly sensitive and privileged Figure information. Plaintiff's counsel admit they conducted their own "privilege screen" and identified hundreds of communications with "known" Figure attorneys. However, Plaintiff's counsel did not disclose this information until after Figure raised other privilege concerns. When Plaintiff finally provided a forensic image of the vendor collection, Figure confirmed it included highly sensitive confidential, proprietary, and potential trade secret company information.

Because Plaintiff claims the vendor collection was necessary to prepare his case, Figure repeatedly asked how he searched for and selected what to take. Plaintiff refused to explain or otherwise justify his claim. Plaintiff previously represented to the Court that he and his counsel would segregate and refrain from reviewing his copy of the collection until this dispute was resolved (*see* Dkt. 34 at 7–11; CMC Tr. 8:3–20 (Mar. 3, 2026)).

Figure is also concerned that Plaintiff continues to possess other improperly obtained materials. Dkt. 22. Despite representing to Figure that Plaintiff had surrendered all Figure documents in his possession, on May 5, 2026, Plaintiff served a supplementary production containing photos and videos of Figure technology—none of which Figure believes are publicly available, and all of which reflect confidential and proprietary information.

**Argument**

---

[1]   Plaintiff states that his vendor collected 17,880 documents. Figure states that in processing the forensic image it received of that collection, Figure's vendor identified nearly 40,000 documents. Either way, Plaintiff took, at minimum, 17,880 documents.

Plaintiff is not entitled to retain or review the stolen documents. Anything relevant should be dealt with in the ordinary course of discovery, i.e., Figure will search the collection and produce responsive documents.

Plaintiff argues that he should be allowed to keep the fruit of his improper taking and either review the entirety himself, or force Figure to conduct a privilege review and then allow him to keep the rest. But the narrow exception to confidentiality agreements allowing employees to retain select materials in support of whistleblower claims does not extend to "wholesale stripping" of an employer's confidential files. Rather, Plaintiff must make a "particularized showing" that the documents were "reasonably necessary" to pursue his claims. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011) (exception not applicable where plaintiff copied tens of thousands of pages, including privileged and sensitive information); *U.S. v. Aurora Las Encinas, LLC*, 2012 WL 12895302, at \*6 (C.D. Cal. Sept. 6, 2012) (exception not applicable where plaintiff collected 2,000 employer documents with no particularized showing of reasonable necessity); *Erhart v. Bofl Holding, Inc.*, 2017 WL 588390, at \*12 (S.D. Cal. Feb. 14, 2017) (employee bore burden of proving reasonable necessity).

Plaintiff has not met, and cannot meet, that burden here. Plaintiff's bare and generalized assertion that he needs these documents to prepare his claims and defenses is insufficient, particularly as he has failed to identify which of these tens of thousands of documents are even relevant. Plaintiff's further suggestion that he needs the vendor's collection to respond to Figure's discovery requests is false given that the requests specifically instruct Plaintiff to respond ***without*** reviewing it. There is no showing the indiscriminate collection of tens of thousands of documents was "reasonably necessary" for Plaintiff's case. To the contrary, the sheer volume, Plaintiff's refusal to provide specifics during numerous meet-and-confer efforts, and the incredibly broad descriptions the vendor provided of what was taken—"'documents and data sources' including" Outlook messages, Slacks, calendar information, and OneNote Notebooks—demonstrates Plaintiff scraped his Figure-issued laptop, engaging in precisely the kind of "vast and indiscriminate appropriation" the law prohibits. *See Cafasso*, 637 F.3d at 1062.

None of the cases Plaintiff cites assist him. Several have nothing to do with the taking of employer documents. *See Neal v. Health Net, Inc.*, 100 Cal.App.4th 831 (2002) (denying disqualification motion based on client sharing confidential information with attorney and finding no such information was shared in any event); *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294 (2001) (denying disqualification motion in part because employer failed to establish employee's counsel actually possessed relevant confidential material from prior representation); *Layer2 Commc'ns Inc. v. Flexera Software LLC*, No. C-13-02131, 2014 WL 2536993 (N.D. Cal. June 5, 2014) (counsel's receipt of confidential information from source previously "associated" with opposing party was insufficient for disqualification).

The other cases Plaintiff relies on are also readily distinguishable. In *MMM Holdings, Inc. v. Reich*, 21 Cal.App.5th 167 (2018), the court affirmed the grant of a SLAPP motion where the employer sued the employee's ***attorney*** based on the attorney's possession of and refusal to turn over documents taken by his client, finding the tort claims arose from petitioning activity and the litigation privilege provided a defense. The Court did not consider whether the employee's taking

2

of the documents fell within the *Cafasso* exception, nor how the documents should be treated in the employee's separate lawsuit. In *Preston v. City of Oakland,* No. 14-CV-02022, 2015 WL 577427 (N.D. Cal. Feb. 11, 2015) (also a disqualification motion), the employee took less than two dozen documents relating to "core" issues in the case and the Court expressly noted that Plaintiff had not violated any contractual obligations; here, Plaintiff took **nearly 40,000** documents, to date he has failed to explain how any of them relate to his claims or defenses, and his taking, retention, and disclosure violates his contractual obligations. Further, unlike most of these cases, Figure does not seek to disqualify Plaintiff's counsel for receipt of privileged or confidential information—it merely wishes to reasonably restrict access.

Plaintiff's treatment of Figure's documents to date demonstrates a complete disregard for the company's sensitive and proprietary information. Plaintiff's assertion that his counsel "has complied and will continue to comply with" that obligation is incorrect. Plaintiff's counsel failed to affirmatively notify Figure when they became aware of material that "obviously appear[ed] to be subject to an attorney-client privilege." *See In re Bona Fide Conglomerate, Inc.*, 728 F. App'x 656, 658 (9th Cir. 2018) (counsel violated ethical duties by failing to disclose privileged information in his possession); *see also e.g. U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122, at *1–3 (C.D. Cal. May 20, 2013) (disqualifying counsel who incorporated privileged materials into pleadings). It was *Figure* who discovered Plaintiff had seemingly relied on a privileged document in preparing his Complaint, and only then did Plaintiff's counsel disclose there were hundreds of additional potentially privileged documents. The recently-produced confidential photos and videos of Figure robots and equipment likewise raise serious concerns. Whether or not Plaintiff intentionally withheld these documents, his counsel previously represented that Plaintiff had already provided all company documents in his possession to Figure in his initial disclosures.

The solutions Plaintiff proposes turn discovery on its head. Plaintiff's request that his counsel be permitted to sift through the documents, including to identify Figure's privileged information, is a non-starter. As Figure is entitled to make its own privilege determinations in the first instance, Plaintiff's related suggestion that Figure provide a list of Figure's attorneys to guide review by his counsel or a third party lacks any legal support and is inadequate to safeguard Figure's rights over this information. *See e.g. United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (power to waive corporation's attorney-client privilege rests with its management, officers, and directors). Further, not only do these documents include highly sensitive Figure information, but Plaintiff has provided no basis to suggest that all or even most are relevant to Plaintiff's claims—meaning Plaintiff would not have been able to obtain many through the discovery process at all.

Plaintiff's alternative—forcing Figure to review the entire collection, log privileged material so that Plaintiff can challenge those privilege claims, and allow him unfettered access to the rest—is also inappropriate. Figure should not bear the burden of reviewing tens of thousands of potentially irrelevant documents (nor engaging in privilege disputes over irrelevant documents) just because Plaintiff wrongfully took them. Merely removing privileged items also fails to address Figure's concern that the collection includes sensitive proprietary and trade secret information with potentially no relevance to the case. Rather, Figure should address this collection as it would any

3

other—run search terms in response to discovery requests, review the hits for privilege and responsiveness, and produce discoverable materials.

**Proposed Resolution**

Figure respectfully requests that the Court enter an order:

1) Requiring Plaintiff to destroy his vendor's copy of the collection;

2) Requiring Plaintiff to return and/or destroy any other Figure documents in his or his counsel's possession that Figure has not produced to him in discovery; and

3) Prohibiting Plaintiff from reviewing, utilizing or disclosing any Figure documents not produced to him in the ordinary course of discovery, pending compliance with (1) and (2) and any further order of the Court.

B. Plaintiff's Position (1487/1500 words)

Plaintiff was terminated on September 2, 2025, after repeatedly raising workplace safety concerns to Figure executives. On September 13, 2025, in anticipation of litigation, Plaintiff's counsel retained an eDiscovery vendor to collect litigation-tailored documents from Plaintiff's Figure-issued laptop. Plaintiff returned the laptop on September 14, and on September 15, Plaintiff's counsel proactively notified Figure that the vendor had collected documents reasonably tailored to Plaintiff's anticipated claims.

Contrary to Figure's assertions, Plaintiff did not create a forensic image of the laptop or indiscriminately "scrape" its contents. The vendor copied 17,880 files based on categories Plaintiff personally identified as relevant to his claims (the "Litigation Collection"). The vendor advised counsel on September 14 via email that it had collected "documents and data sources" including "Rob Screenshots, Rob OneNote, Rob Slack, Rob Gruendel Weekly Calendar, Rob Figure AI Home Robot Product Safety Concern, OneNote Notebooks, Outlook."[2] These categories directly track the subject matter of Plaintiff's claims: workplace safety concerns, internal communications, and scheduling records reflecting the events at issue.

As a voluntary accommodation, not a concession that review is legally barred, Plaintiff agreed to refrain from reviewing the Litigation Collection while the parties attempted to establish a privilege protocol, and produced the collection to Figure's eDiscovery vendor. Plaintiff's vendor also identified and sequestered approximately 311 documents referencing known legal counsel (the "Filtered Collection"), which Plaintiff's counsel has not reviewed and which remain walled off from Plaintiff's counsel. Plaintiff repeatedly proposed that Figure review the Litigation

---

[2] Upon request, Plaintiff can provide this email correspondence from the vendor for the Court's review.

Collection and provide a privilege log, or at minimum identify attorneys or documents to flag to prevent inadvertent review. Figure categorically refused. That refusal makes Plaintiff's accommodation unworkable.

**Plaintiff is legally entitled to review the Litigation Collection.**

**First, the documents were lawfully retained in anticipation of litigation.** In *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011), the Ninth Circuit rejected the whistleblower exception where the relator copied tens of thousands of pages with no showing that specific documents were necessary to her claims. Here, by contrast, Plaintiff personally directed collection of discrete, identified categories of documents bearing directly on his safety-related claims—the collection was targeted, not indiscriminate. Similarly, *U.S. v. Aurora Las Encinas, LLC*, 2012 WL 12895302, at *6 (C.D. Cal. Sept. 6, 2012), is distinguishable because there the plaintiff offered no particularized showing whatsoever. Plaintiff has identified the specific categories collected and their direct relationship to his claims, satisfying the "particularized showing" standard.

In *MMM Holdings, Inc. v. Reich*, 21 Cal. App. 5th 167, 230 Cal. Rptr. 3d 198 (2018), the court affirmed an anti-SLAPP ruling where a whistleblower's attorney retained approximately 26,000 documents the client took upon termination, recognizing that retention for litigation purposes was permissible. Figure contends *MMM Holdings* is limited to its anti-SLAPP procedural posture, but the court's reasoning—that an employee's provision of documents to counsel in anticipation of litigation constitutes protected petitioning activity—applies with equal force here. California courts consistently hold that a party does not improperly disclose confidential information by providing it to counsel for use in that party's own lawsuit. *Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 843–44 (2002). In *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 302–04, 308 (2001), the court held that a former employee suing for wrongful termination could disclose to counsel facts relevant to the termination, including employer confidences and privileged communications, because disqualification rules otherwise could effectively bar former employees from litigating claims against their employers, contrary to *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1190 (1994).

In *Preston v. City of Oakland*, No. 14-CV-02022, 2015 WL 577427 (N.D. Cal. Feb. 11, 2015), the court denied a motion to disqualify counsel and return documents, holding that the plaintiff could use documents accessed during employment, including privileged materials, to pursue her claims. Figure distinguishes *Preston* on volume and the absence of contractual obligations, but those distinctions go to the scope of any protective measures, not to the threshold legal right of an employee to share employment-related materials with litigation counsel. *See also Layer2 Commc'ns Inc. v. Flexera Software LLC*, No. C-13-02131, 2014 WL 2536993, at *10 (N.D. Cal. June 5, 2014). Plaintiff's prior agreement to refrain from review was voluntary and

conditional on Figure's good-faith participation in a privilege protocol; Figure's refusal renders that accommodation inoperative.

**Second, the Litigation Collection is directly relevant to Plaintiff's claims and Figure's counterclaims**. The documents came from Plaintiff's Figure-issued laptop, relate to his work as Head of Product Safety, and are presumptively responsive. For example, Figure's First Request for Production seeks "All Documents constituting, referencing, reflecting, or evidencing the safety issues You claim You observed at Figure." Plaintiff cannot fully respond to that request, or prepare his claims and defenses, without reviewing the Litigation Collection. Figure's suggestion that Plaintiff respond to discovery requests *without* reviewing the collection would require Plaintiff to answer interrogatories and document requests while deliberately ignoring the most relevant repository of responsive materials. Continued sequestration would deprive Plaintiff of the ability to use materials he lawfully possessed and shared with counsel. Figure's concerns about proprietary and trade secret information are adequately addressed by the Stipulated Protective Order already in place in this action, which governs the treatment of confidential and highly confidential materials.

**Third, Figure bears the burden of establishing privilege and refuses to do so.** The party asserting privilege bears "the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009). Federal Rule of Civil Procedure 26(b)(5)(A) likewise requires a party withholding documents on privilege grounds to describe the materials sufficiently to permit assessment of the claim. Figure cannot assert that privilege is endangered while refusing to identify privileged documents, provide attorney names, or establish the facts supporting any privilege claim. Plaintiff proposed refraining from reviewing documents Figure identifies as privileged, requested attorney names and document identifiers, invited Figure to review the collection and produce a privilege log, and proposed neutral third-party review. Figure rejected each proposal without offering a constructive alternative. It cannot claim privilege is at risk while declining every reasonable mechanism to protect it.

**Fourth, Plaintiff's counsel has complied with all ethical obligations.** Under *State Compensation Insurance Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999), as ratified in *Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092, 1099 (Cal. 2007), a lawyer who receives materials that obviously appear privileged or confidential, and where it is reasonably apparent they were made available inadvertently, must refrain from further examination and immediately notify the privilege holder. *McDermott Will & Emery LLP v. Superior Court*, 10 Cal. App. 5th 1083, 1106–07 (2017). Plaintiff's counsel has fully complied: the vendor identified and segregated approximately 311 documents referencing legal counsel; counsel has reviewed neither the Litigation Collection nor the Filtered Collection; the Filtered Collection remains behind a vendor-side privilege wall; and counsel has repeatedly offered to collaborate on a review protocol. Figure's

6

assertion that counsel "failed to affirmatively notify" it is incorrect—counsel disclosed the existence of potentially privileged materials to Figure before any review and before Figure raised privilege concerns, and proposed a protocol for handling them. The factual allegations in Plaintiff's Complaint were based on Plaintiff's own firsthand knowledge of events he personally witnessed, not on privileged documents. The *State Fund* framework requires caution when obviously privileged materials are encountered; it does not authorize indefinite sequestration at Figure's unilateral insistence.

**Fifth, Plaintiff's supplemental production was made in the ordinary course of discovery.** Plaintiff identified a flash drive potentially containing employment-related documents, promptly provided it to his eDiscovery vendor, reviewed the contents, and produced responsive materials to Figure under his continuing obligation to supplement under Rule 26(e). This supplementation was made in the ordinary course under Rule 26(e), and Figure identifies no basis for concluding otherwise.

**Finally, delay prejudices Plaintiff.** Plaintiff agreed to a November 2026 discovery cut-off, expecting this dispute to be resolved promptly. The instant dispute threatens Plaintiff's ability to prosecute his claims and defend against counterclaims.

**Proposed Resolution**

1. Plaintiff requests that the Court permit Plaintiff's counsel to immediately review the Litigation Collection, excluding the Filtered Collection, with heightened caution, including segregating and refraining from examining documents that obviously appear privileged and promptly notifying Figure upon encountering such materials.

2. Alternatively, the Court should compel Figure to review the Litigation Collection and, within thirty days, produce a privilege log identifying any documents over which it asserts privilege in accordance with Federal Rule of Civil Procedure 26(b)(5)(A) and *Costco*, and permit Plaintiff to review all non-privileged documents upon production of the log.

3. In either event, the Filtered Collection should remain sequestered pending Figure's identification of documents over which it asserts privilege, with a privilege log due within thirty days.

### III.   PARTIES' POSITIONS ON WHETHER HEARING IS REQUIRED

A. <u>Figure's Position</u> (16/100 words)

Figure believes this dispute is straightforward and can be resolved on the papers without a hearing.

B. <u>Mr. Gruendel's Position</u> (14/100 words)

Plaintiff believes this dispute can be resolved on the papers without a hearing.

## IV.    DISCOVERY CUT-OFF DATES

Close of Fact Discovery: November 14, 2026
Close of Expert Discovery: March 15, 2027

## V.    COMPLIANCE WITH CONFERENCE OF LEAD COUNSEL REQUIREMENT

Lead counsel met and conferred about this dispute by Zoom videoconference on May 7, 2026. Participants included Robert Ottinger and Allison Marculitis on behalf of Mr. Gruendel, and Viola Trebicka and Teodora Pasca on behalf of Figure.

Respectfully submitted,

Dated: June 9, 2026

**THE OTTINGER FIRM, P.C.**

*/s/ Allison Marculitis*

ROBERT W. OTTINGER
ALLISON MARCULITIS
*Lead Counsel for Plaintiff/Counter-Defendant Robert Gruendel*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Viola Trebicka*
VIOLA TREBICKA
*Lead Counsel for Defendant/Counter-Claimant Figure AI Inc.*

8